UNITED STATES OF AMERICA *v.* H. HACKFELD & COMPANY, LTD., a corporation.

(2 Cases.)

DATED: OCTOBER 28, 1902.

1.  The custody of immigrants after examination by proper inspection officers and decision adverse to their landing is in the steamship company or its agent bringing such immigrants into the country.

2.  It is the duty of the steamship company or its agent, after notification of the rejection of any immigrant, to deport such immigrant to the country from whence he came.

3.  If, after rejection by the proper immigration officers and pending deportation, an immigrant escapes into the country, the steamship company or its agent is liable under the law.

4.  Due care on the part of the steamship company or its agent to prevent escape of immigrants is no excuse under the law and cannot be proven.

5.  Nothing will excuse steamship company or its agent for escape of rejected immigrants but what is known as *vis major*, or inevitable accident.

6.  When government has proven to the satisfaction of jury the rejection of immigrants and notice to the steamship company or its agent thereof, the burden of proof is then on the steamship company or its agent to show due return of immigrants to the country from whence they came.

CRIMINAL LAW.    Informations based upon Section 10 of an Act of Congress of date March 3, 1891, entitled "An Act in amendment of the various Acts relative to immigrants and the importation of aliens under contract or agreement to perform labor."

*Robert W. Breckons,* U. S. District Attorney, for government.

*Kinney, McClanahan & Bigelow,* for defendants.

CHARGE TO THE JURY.

ESTEE, J.    These cases arise upon two informations filed by the United States District Attorney for the District of Hawaii, in which informations the defendant is charged with violating the provisions of an Act of Congress of date March 3, 1891, and entitled "An Act in amendment of the various Acts relative to immigrants and the importation of aliens under contract or agreement to perform labor."

This Act prohibits the introduction into the United States of certain objectionable classes of aliens and provides that when

ships arrive at an American port having on board certain alien immigrants, the inspection officers shall enter them and make an inspection of the aliens on board, or they "may order a temporary removal of such aliens for examination at a designated time and place, and then and there detain them until a thorough inspection is made." (Section 8 of the Act.)

The special provision of the Act under which these informations are prosecuted, is Section 10 thereof, which reads as follows:

"That all aliens who may unlawfully come to the United States shall, if practicable, be immediately sent back on the vessel by which they were brought in. The cost of their maintenance while on land, as well as the expense of the return of such aliens, shall be borne by the owner or owners of the vessel on which such aliens came.

"And if any master, agent, consignee or owner of such vessel shall refuse to receive back on board the vessel such aliens, or shall neglect to detain them thereon, or shall refuse or neglect to return them to the port from whence they came, or to pay the cost of their maintenance while on land, such master, agent, consignee or owner shall be deemed guilty of a misdemeanor. ."

Said section provides further the manner of the punishment for such misdemeanor, namely, by a fine to be imposed.

Under the allegations of one of the informations filed in these cases, which have been consolidated for the purpose of convenience, it appears that:

On the 6th day of September, 1901, one Tatsugoro Muramoto, a Japanese immigrant, came to the port of Honolulu on board of the steamship "Doric," bound on a voyage from the empire of China to the state of California, and for which steamship the defendant herein was the agent; that the said Japanese immigrant is unlawfully in the country, having come here contrary to the provisions of Section 10 of the immigration Act as amended, heretofore quoted, and that the defendant refused to receive back on board the said vessel, refused to detain on board the said vessel and neglected and refused to return to the port from whence he came said Japanese immigrant.

The same allegations appear in the second information, in relation to two Japanese immigrants, named therein as Hayataro Chakuno and Takichi Kuwano, who arrived here on board the steamship "China," which was bound on a voyage from the empire of China to the state of California, on the 28th day of August, 1901; that the said Japanese immigrants are unlawfully in the country, having come here contrary to the provisions of Section 10 of the immigration Act as amended, hereinbefore quoted, and that the defendant refused to receive back on board the said vessel, and refused to detain on board the said vessel and neglected and refused to return to the port from whence they came, the aforesaid Japanese immigrants.

That defendant is the agent of the said steamship, "China."

It appears that the special immigrants in these cases were removed from on board the respective vessels referred to in accordance with the provisions of Section 8 of the aforesaid Act, and temporarily landed for the purposes of a thorough inspection; that after inspection, they were rejected by the inspection officers and notification of such rejection sent to the defendant herein as agent of the said steamships, "China" and "Doric.'

That afterwards said immigrants escaped.

It is claimed by the government that the immigrants referred to were not returned to the port from whence they came by the defendant herein, in accordance with law, but that the defendant herein refused and neglected to do so.

Gentlemen of the jury: I will instruct you as to the law in this case. The facts you are to be the sole judges of.

It is the law, that after immigrants have been examined by the proper inspection officers and a decision adverse to their remaining in the country is arrived at, that their custody is then in the steamship company or its agent; and it is the duty of the steamship company or its agent, after notification of the rejection of such immigrants, to deport them to the country from whence they came.

If, after rejection by the aforesaid immigration officers, and pending deportation, the immigrants, or any one of them, es-

cape from the custody of the steamship company or its agent, then the said steamship company or its said agent, is liable under the law.

If, therefore, you should find, upon a consideration of the facts in these cases, that any one of these immigrants was rejected by the proper inspection officers and due notice given to the steamship company or its agent, to-wit: the defendant herein, and after such rejection and notice and pending deportation, said immigrant escaped, then you must find a verdict of guilty as to the charge in reference to that immigrant; and so on through the two cases.

Gentlemen of the jury, I instruct you further that you cannot consider any attempt upon the part of the defendant to prove due care on its part, or the fact that due care was exercised to prevent the escape of any one of these immigrants. Under the Act of Congress upon which these informations are based, this is no excuse. The steamship company took the risk that the aforesaid Japanese immigrants would not be adjudged competent to enter the country when it brought them, or either of them, to this port, and it must at its peril conform to the provisions of the statute. While this may seem harsh, yet the intent of Congress, as shown in the Act, is clear. Nothing will excuse the steamship company, or its agent (the defendant in this case), but what is known as *vis major* (overwhelming force) or inevitable accident. Nothing has been shown that the escapes in these cases was the result of either of these conditions.

There is one thing further, gentlemen of the jury; you are instructed that in these cases, when the government has established to your satisfaction that these immigrants coming into the United States were rejected by the immigration officers, duly authorized to act in these matters, and the defendant was notified of such rejection, it then became incumbent on the defendant, as I have before stated, to return such immigrants to the port whence they came.

When the government has established these facts to your satisfaction, the burden of proof is cast on the defendant to show that such return was made. As the law has placed the custody

of such immigrants in the steamship companies, as I have heretofore instructed you, it is not required of the government that it prove that the immigrants were not returned. It is a well settled rule of law, that even in criminal cases, the person within whose knowledge the facts are supposed to lie, is required to prove such facts. I therefore instruct you, that if the defendant in these cases has not made out to your satisfaction that the immigrants were returned to the port whence they came, then your verdict should be guilty.

In arriving at a verdict in this case, gentlemen of the jury, it must be by the unanimous assent of all your members.

Note: See similar case, *H. Hackfeld & Co., Ltd., v. U. S.*, affirmed by C. C. A. Oct. 5, 1903, not yet reported.